## SENECA NATION OF INDIANS v. HAMMOND.

*Statutory construction — laws relating to Indian reservation—Constitutional law.*

The provision of Laws 1873, chapter 455, section 1, that any Indian residing on the Cattaraugus, etc., reservation may sell or dispose of timber growing on land inclosed and occupied by him ; *held*, not to be inconsistent with or repeal Laws 1847, chapter 365, section 20, which prohibits white men from cutting down and removing trees from Indian reservations..

The authority of the legislature to pass an act vesting the title to property owned by an Indian nation in its collective capacity in individual Indians of the nation questioned.

APPEAL by defendant from an order at the special term sustaining a demurrer to the answer.

The action was brought by the Seneca Nation of Indians against George Hammond. The complaint alleged as a cause of action the unlawful purchase and carrying away from the Cattaraugus reservation of a quantity of cord wood contrary to the provisions of Laws 1847, chapter 365, and demanded judgment for twice the value of the property taken.

The defendant for answer denied the allegations of the complaint

and further alleged, that in June, 1873, certain Indians, members of the Seneca Nation and tribe, were residing upon said reservation and in the occupation and possession of certain lands thereon which they had inclosed by good substantial fences, and which lands they had respectively occupied and improved, and which had been thus inclosed for many years. That said Indians, each for his own use and benefit, sold and transferred to defendant trees and timber then being and growing upon his lands so occupied and fenced, for which defendant paid to each Indian the full value in money, and afterward cut and carried away such trees and timber.

To this answer plaintiffs demurred on the ground that it did not contain facts sufficient to constitute a defense. The demurrer was sustained, and the following opinion, which was adopted at general term, was delivered at special term:

BARKER, J. It is averred in the plaintiffs' complaint that the defendant unlawfully entered upon the reservation of lands belonging to them and cut and carried away standing trees and timber, and they seek to recover double the value of such trees and timber in pursuance of the provisions of section 22 of chapter 365, Laws of 1847.

In the second clause of his answer, the defendant pleads as his justification and defense that the lands from which he cut and took the wood and timber in question were that part and portion of the plaintiffs' reservation of lands which is situated in the town of Brant in the county of Erie; that such lands were and for over twenty years have been actually inclosed by a good substantial fence and occupied by three individual Indians, giving their names, who were members of said nation or tribe of Indians; and that they for their own benefit did sell and dispose of such standing timber, to him, the defendant, and that he paid them large sums of money therefor, the value of such trees and timber; that in pursuance of such purchase and sale he cut such trees and timber into cord wood, and removed the same from said lands, as he lawfully might do.

In considering the questions presented on this demurrer I shall not question but what the legislation had upon the subject is within the proper power and sovereignty of the State, and that the several acts referred to are valid and binding laws on the Seneca nation of Indians; that the acts giving permission to sell standing timber on

Indian reservations within the State, and regulating the same, are not any infringement upon the exclusive jurisdiction granted to the United States government to regulate trade, traffic and commerce with Indian tribes. In this instance the plaintiffs' right to sue in the State courts and the measure of damages they seek to recover are based wholly upon State laws. The several statutes are a series of police regulations, declaring certain transactions with Indians to be unlawful, and imposing pains and penalties for doing the forbidden acts, and permitting certain kinds of contracts to be made between citizens and Indians, and declaring them lawful.

The case in hand comes to this single question : Does the act of 1873, chapter 455, repeal all former statutes prohibiting the entry upon Indian lands by white men and cutting and carrying away timber.

In view of previous judicial determinations and legislative enactments I am fully satisfied that the legislature did not intend by this act to make the entry, which the defendant *confesses* in his answer, lawful, and therefore the demurrer must be sustained.

Owing to the uncivilized condition of the Indians, it has been the policy of the State of New York to preserve and protect Indian lands, and the native forest growing thereon, from injury and destruction by white inhabitants. To forbid all entry on such lands, for the purpose of cutting and carrying away growing timber, and at the same time under restrictions to permit the Indians themselves to remove timber, manufacture the same into articles of trade and currency, and to vend the same in the markets of the country.

Particular reference to treaties or general statutes containing these provisions is unnecessary, for they have existed for a period of more than one hundred years.

The defendant relies wholly upon the provisions of the act of 1873, chapter 455. Section 1st, in terms, permits individual Indians residing upon either the Cattaraugus or Allegany reservations to sell or dispose of for his own benefit any timber or trees, or the manufacture thereof, being or growing on any lands actually inclosed by a good substantial fence and occupied by him. The repealing clause is in another section, and in these words, "All provisions of law inconsistent with this act are hereby repealed."

The provisions contained in the special laws of 1847, chapter 365, sections 20, 21 and 22; and chapter 150, section 1, Laws of 1845,

are in conflict with the lawfulness of the defendant's act, but he insists they are repealed by the section just quoted.

Section 19 of the act of 1847 provided that any Indian residing on said reservations, having land allotted to him as by said act provided, may sell for his benefit any timber or trees on that portion of such land which he shall actually and in good faith clear for the purpose of cultivation.

Section 20 of the same act gave permission to individual Indians residing on said reservations to make and manufacture shingles or staves from timber growing on the lands so allotted to him, or on any wild land not allotted to other individual Indians, and that he might sell and dispose of the same for his own benefit. But this must be done without the aid or assistance of any white man. The same section also provides that "no white person shall, under the pretense of being hired by any Indian, or any other pretense, be employed in any such manufacture, or in removing any timber, or cutting down any trees for that purpose."

In the year 1859 (chapter 294), said section 19 was repealed, doubtless, at the instance of the Indian nation.

The law of 1845 was an enabling act, giving the Seneca Indians permission, in their national capacity, to maintain suits in the State courts against white persons for injuries to and trespasses upon their lands. Theretofore, in virtue of other laws, like suits were to be instituted by certain county officials, in the name of the people, to collect penalties for trespassing upon or taking timbers from these lands. 1 R. S. 209, §§ 72–76, inclusive.

The said first section of the act of 1845 further provided that the possession of pieces of lands by allottment by individual Indians should be deemed to be the possession of the nation; that no action brought by the nation should be barred or defeated on the ground that land, in relation to which the action was brought, was in the possession of any individual Indian; nor shall any license, consent, lease, agreement, or any interest whatsoever made or given by any individual Indian, be received in evidence in any such action, in bar, defense, or mitigation of damages.

Thus, it appears that at the time of the passage of the act of 1873, by special laws, as well as by general statutes, all white persons were forbidden to enter upon Indian lands. They could not cut and remove trees growing thereon without committing a trespass.

Has this act effected a repeal of all these laws? If they are inconsistent with the privilege extended to individual Indians, then they are repealed; but if the benefits and advantages intended to be conferred can be fairly enjoyed, and these statutes remain to be in force, then they are not repealed. The provisions of this act are similar to those of the 19th section of the act of 1847, which was repealed in 1859. The Indian who may come within the provisions of this law can do just what the act sanctions, to wit: sell and dispose of, for his own benefit, trees and timber being or growing on the lands he may occupy; and it cannot with reason be said that it is inconsistent therewith to hold that no white person shall enter upon the reservation and cut down or draw off the same under a purchase. To hold that he might would sanction a serious invasion upon Indian lands, and very likely lead to disturbance between the citizen and the Indian.

Under section 19 of the act of 1847, a similar privilege was enjoyed under a restraint that no white man should assist in cutting and removing the timber. In the face of the traditional policy of the State, and the wisdom and necessity of statutes, of the nature and purpose of those now claimed to be repealed, it cannot be judicially held that they are inconsistent with the privilege granted to a member of the Indian tribe under the late act of 1873. The act was simply to determine the rights and privileges of the Indians as between themselves, not in the least to extend privileges to whites. If such was the purpose of the legislature, it would have, in a more direct and intelligent manner, repealed salutary laws that had existed from the foundation of the government.

The demurrer to the answer is sustained, with leave to the defendant to answer over on paying costs.

*William W. Hammond* and *J. M. Humphrey*, for appellant.

*James G. Johnson*, for respondent.

Present — MULLIN, P. J., E. DARWIN SMITH and GILBERT, JJ.

GILBERT, J. It might be difficult for the defendant to justify his taking of property, the title of which is vested in the Seneca Indians in their collective capacity, under an act of the legislature which merely authorizes a sale by individual Indians. For it is impossible to transfer property from the owner to another by act

of the legislature without the owner's consent. Growing timber is part of the realty and, as we understand, the plaintiffs are the owners of the reservation from which the timber in this case was taken. *Blacksmith* v. *Fellows,* 7 N. Y. 401.

But, as this question was not raised on the argument, we will not further discuss it. Assuming that the vendors were competent to sell the property in controversy, the question is, whether the defendant's entry upon the reservation and the mode of appropriating the property by him was not in violation of law. The answer states that the defendant manufactured the timber into cord-wood and took and carried it away from the premises of the individual Indians on the reservation from whom he purchased it. We are of opinion that such acts were illegal for the reasons set forth in the opinion delivered at special term. Section 20 of the act of 1847 expressly prohibits any white man being employed in any such manufacture, or in removing any timber or cutting down any trees for that purpose. Laws 1847, chap. 365. The preceding section of the same act authorized individual Indians to sell, for their own benefit, trees and timber growing on those parts of the reservation which had been allotted to them, and which they should actually and in good faith clear for cultivation. But the latter section was repealed in 1859. Laws 1859, chap. 294. In 1873, the legislature passed an act which, in substance, so far as the question before us is involved therein, restored the section so repealed and repealed all laws inconsistent with that act. Laws 1873, chap. 455. We think the court below very properly held that section 20 of the act of 1847 is not inconsistent with the act of 1873. Indeed the legislature, by inserting section 19 aforesaid in the act of 1847, which was an enactment to the same effect, declared that the two provisions were perfectly consistent with each other.

No doubt statutes may be repealed without any express words, or by vague and indefinite language like that employed in the act of 1873. Still the court in all such cases are bound to uphold the prior law, if the two may stand together. *Williams* v. *Potter,* 2 Barb. 316.

We must maintain the validity of our own legislation in respect to the Indians who are inhabitants of the State until some conflicting legislation of congress is brought to our notice.

The order appealed from must be affirmed, with costs.

*Order affirmed.*